# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RODNEY LEADUM,                     :          CIVIL ACTION
           Petitioner              :
                              :
      v.                             :
                              :
                              :
SUPERINTENDENT GEORGE PATRICK, et al.,  :
           Respondent              :          NO. 06-1376

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS                          December 11, 2006
UNITED STATES MAGISTRATE JUDGE

      Presently before this court is a *pro se* Petition for a Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254. Rodney Leadum ("Petitioner"), currently incarcerated at the State Correctional Institute at Houtzdale, Pennsylvania, seeks habeas relief based on claims of ineffective assistance of counsel, newly discovered evidence, sufficiency of the evidence, and trial court error. The Honorable Louis H. Pollak referred this matter to the undersigned for preparation of a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Petitioner's habeas claims be DISMISSED and DENIED without a hearing.

## I. BACKGROUND AND PROCEDURAL HISTORY[1]

      The facts leading to Petitioner's arrest and conviction, as summarized by the Superior Court of Pennsylvania, are as follows:

> [Petitioner] was convicted of criminal conspiracy to murder Mark Motley, who was murdered by one of [Petitioner's] co-conspirators in the early morning hours of December 5, 1998. At

---

[1] The facts set forth in this background and procedural history were gleaned from Petitioner's Habeas Corpus Petition, the Brief in Support of Petitioner's Habeas Petition, the Commonwealth's Response to the Habeas Petition, inclusive of all exhibits thereto, and the state court record.

approximately 3:35 a.m., Mark Motley and a man named Jeffrey Hunt were standing in front of 635 North Franklin Place in Philadelphia when several men armed with handguns approached the pair. When one of the assailants who had approached Hunt pulled out a handgun, Hunt began struggling with the man. At about that time, Mark Motley turned and ran toward the building situated at 635 North Franklin Place, but his escape was cut short when he was shot in the back by a man later identified as Hakeem Cooper. Mark Motley's wounds proved fatal and he was later pronounced dead at the scene. Several shots were also fired at Hunt, who was grazed in the head but who was able to avoid serious injury. The assailants then fled the scene.

At approximately 3:45 a.m., Philadelphia Police Officer[s] Robert Walls and Joseph Sacro responded to a radio call of a shooting at 635 North Franklin Place. While proceeding to the scene of the shooting, the officers noticed five men approximately one-half block from the location of the shooting. When the men saw the officers, they began running. Officers Walls and Sacro pursued the fleeing men, first in their police cruiser, then on foot. During their pursuit, two guns were discovered in a lot near the intersection of Fairmount Avenue and North Franklin Place. Ballistics tests later confirmed that one of the guns fired the shot that killed Motley. Eventually, six men were apprehended in connection with the shooting, one of them [Petitioner].

At [Petitioner's] trial, Jeffrey Hunt testified that he witnessed [Petitioner] and his cohorts approach and that [Petitioner] "pulled [a] gun out and pointed." N.T., 7/17/01, at 348. Hunt then inquired of [Petitioner], "what's this all about" and [Petitioner] told him to "shut the 'F' up." *Id.* Hunt further testified that he witnessed [Petitioner] shoot his handgun several times at Hunt. *Id.* at 383-84. One bullet nicked Hunt's head. *Id.* at 357.

Victor Robinson, a resident of 704 North Franklin Place, testified that he awoke to the sound of several gun shots that night and saw police officers chasing a group of men. N.T., 7/18/01, at 580-81. The police eventually apprehended most of the men in front of Robinson's house, but did not notice one man hiding behind a gold Cougar close by. *Id.* at 581. Robinson saw the man hiding and also saw he was holding a gun. *Id.* at 584-85. He called the police on his telephone to alert them, and the dispatcher alerted the officers on the scene via the radio. *Id.* at 585-86.

Officer William Siefert testified that when he received the radio call about the individual hiding behind the car, he approached the vehicle. *Id.* at 575. As he approached, he saw [Petitioner] appear

from underneath the car and attempt to run away. *Id.* at 575-76. Several officers eventually apprehended [Petitioner], who kicked one officer in the face and yelled, "you're not going to take me alive." *Id.* at 576.

At the conclusion of his jury trial, [Petitioner] was found guilty of criminal conspiracy and was sentenced to 15 to 30 years' imprisonment.

*Commonwealth v. Leadum*, No. 2836 EDA 2001, slip op. at 1-3 (Pa. Super. Ct. Dec. 18, 2002) ("Super. Ct. Dir. App. op.").

The Pennsylvania Superior Court affirmed Petitioner's conviction and sentence on December 18, 2002. *Commonwealth v. Leadum,* 817 A.2d 1180 (Pa. Super. Ct. 2002) (Table). The Pennsylvania Supreme Court denied allowance of appeal on July 21, 2003. *Commonwealth v. Leadum*, 829 A.2d 1157 (Pa. 2003) (Table). Petitioner did not seek certiorari in the United States Supreme Court.

On October 3, 2003, Petitioner filed a timely petition under the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-46. Resp. at 2. Court-appointed counsel filed a no-merit letter. *Id.* The trial court ultimately decided that there were no meritorious issues and denied the PCRA petition. *Id.* The Superior Court affirmed the denial of PCRA relief on June 25, 2005. *Commonwealth v. Leadum*, 881 A.2d 885 (Pa. Super. Ct. 2005) (Table). Petitioner did not seek allowance of appeal.

The instant petition for federal habeas corpus relief, filed on March 31, 2006, alleges:

Ground One - newly discovered evidence demonstrates that Commonwealth witness Gregory Hunt committed perjury when he testified that he witnessed the shootings take place;

Ground Two - the trial court erred by failing to instruct the jury that it should consider the testimony of Gregory and Jeffrey Hunt with caution because they were paid informants;

> Ground Three - trial counsel was ineffective for failing to object to the trial court instruction that the objective of the conspiracy was to kill the victim rather than merely shoot the victim, as charged in the information;
>
> Ground Four - trial counsel was ineffective for failing to preserve an objection to the offense gravity score applied to him by the sentencing court;
>
> Ground Five - the evidence presented at trial was insufficient to sustain his conviction for criminal conspiracy;
>
> Ground Six - trial counsel was ineffective for failing to object to misconduct committed by the prosecutor during closing argument; and
>
> Ground Seven - trial counsel was ineffective for failing to seek a cautionary instruction regarding a handgun which was seized several hours after Petitioner's arrest.

Pet. at 9-10; Brief in Support of Petitioner's Petition for Writ of Habeas Corpus ("Pet'r's Br.") at 12-52. The Commonwealth contends that Petitioner's claims should be denied as meritless. *See* Resp. at 16-32. Except for one claim which should be dismissed as procedurally defaulted, this court agrees.[2]

## II.  DISCUSSION

### A.    AEDPA Standard of Review

The habeas statute, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides that this court cannot grant habeas relief on a claim that has been adjudicated by a state court unless the state court's adjudication of the claim:

---

[2]The Commonwealth has chosen to address Petitioner's claims on the merits and has not argued that any claims ought to be dismissed for lack of exhaustion or procedural default. In footnote 4, the court has identified one claim which is procedurally defaulted and recommends dismissing it as such. In footnote 10, the court identifies a claim Petitioner apparently did not present to the state courts. Nonetheless, the Commonwealth addressed the claim on its merits and the court will do so as well, finding it lacks merit. *See* 28 U.S.C. § 2254(b)(2) (allowing the court to deny relief on an unexhausted claim).

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  The habeas statute also provides that any findings of fact made by the state court must be presumed to be correct; Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court's adjudication of a claim is contrary to United States Supreme Court precedent if the state court has applied a rule that contradicts the governing law set forth in Supreme Court precedent or if the state court confronts a set of facts which are materially indistinguishable from a decision of the Supreme Court and the state court arrives at a different result from the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  In determining whether a state court's decision was contrary to Supreme Court precedent, the habeas court should not be quick to attribute error.  *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*).  Instead, state court decisions should be "given the benefit of the doubt."  *Id.*  In this regard, it is not necessary that the state court cite the governing Supreme Court precedent or even be aware of the governing Supreme Court precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*).  All that is required is that "neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent.  *Id.*

If, however, the state court does correctly identify the governing United States Supreme Court precedent, unreasonable application analysis, rather than contrary analysis, is appropriate.  *Williams v. Taylor*, 529 U.S. at 406.  A state court decision constitutes an unreasonable application of Supreme Court precedent if the state court correctly identifies the governing legal rule but applies

it unreasonably to the facts of the petitioner's case. *Id.* at 407-08. In making the unreasonable application determination, the habeas court must ask whether the state court's application of Supreme Court precedent was objectively unreasonable. *Id.* at 409. The habeas court may not grant relief simply because it believes the state court's adjudication of the petitioner's claim was incorrect. *Id.* at 411. Instead, the habeas court must be convinced that the state court's adjudication of the claim was objectively unreasonable. *Id.* When deciding whether a state court's application of Supreme Court precedent was unreasonable, it is permissible to consider the decisions of lower federal courts which have applied clearly established Supreme Court precedent. *See Marshall v. Fredericks*, 307 F.3d 36, 71 n.24 (3d Cir. 2002); *Moore v. Morton*, 255 F.3d 95, 104 n.8 (3d Cir. 2001).

The Supreme Court, addressing the AEDPA's factual review provisions in *Miller-El v. Cockerell*, 537 U.S. 322 (2003), interpreted § 2254(d)(2) to mean that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Id.* at 340. Yet, the habeas court can "disagree with a state court's credibility determination." *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 528 (2003) (rejecting state court's factual determination under § 2254(e)(1) and § 2254(d)(2)). If the state court's decision based on a factual determination is unreasonable in light of the evidence presented in the state court proceeding, habeas relief is warranted under § 2254(d)(2).[3] *Lambert,* 387 F.3d at 235.

---

[3]Within the overarching standard of § 2254(d)(2), a petitioner may attack specific factual determinations made by the state court that are subsidiary to the ultimate decision. *Lambert*, 387 F.3d at 235. Here, § 2254(e)(1) instructs that the state court's factual determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence. *Id.* A petitioner may develop clear and convincing evidence by way of a hearing in federal court if he satisfies the prerequisites for that hearing found in 28 U.S.C. § 2254(e)(2). *Lambert*, 387 F.3d at 235. In the final analysis, even if a state court's individual factual determinations are overturned, the remaining findings must still be weighed under the overarching standard of § 2254(d)(2). *Lambert*, 387 F.3d at 235-36.

**B.      Standard for Ineffective Assistance of Counsel**

Petitioner has advanced several claims of ineffective assistance of counsel, which must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.   In making this determination, the court's scrutiny of counsel's performance must be "highly deferential." *Id.* at 689.   The court should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*   In short, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*

Second, Petitioner must show that counsel's deficient performance "prejudiced the defense" by "depriv[ing] the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.   That is, Petitioner must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.* at 694, but it is less than a preponderance of the evidence.  *Id.* at 693, 694.

If Petitioner fails to satisfy either prong of the *Strickland* test, there is no need to evaluate the other part, as his claim will fail.  *Id.* at 697.   Further, counsel will not deemed to be ineffective for failing to present an meritless claim or objection.  *Parrish v. Fulcomer*, 150 F.3d 326, 328-29 (3d Cir. 1998); *Moore v. Deputy Commrs. of SCI-Huntingdon*, 946 F.2d 236, 245 (3d Cir. 1991).

**C.      Newly-Discovered Evidence claim - Ground One**

Petitioner argues that Commonwealth witness Gregory Hunt ("Gregory") committed perjury at Petitioner's trial when he testified to seeing the charged crimes occur and that due process mandates the reversal of his conviction because of Gregory's perjury.   Pet'r's Br. at 12-20. Petitioner maintains that the evidence which establishes Gregory's perjury is Gregory's testimony on July 5, 2001 during a federal sentencing hearing in this court for Jeffrey Johnson, Dennis Jenkins, Otto Barbour and James Phillips.   *Id.* at 13.   Petitioner contends that, at the July 5 hearing, which was only twelve days before Gregory's trial testimony, Gregory stated he was not present during the shooting of Mark Motley, the decedent in this case.   *Id.*

The court has reviewed the Superior Court's opinion on direct appeal and concludes that the Superior Court did not address the due process claim Petitioner advances here.   Specifically, the Superior Court did not determine whether or not Gregory committed perjury at Petitioner's trial and, if so, whether his perjury entitled Petitioner to a new trial under the Due Process Clause.   Instead, the Superior Court concluded  it was not clear that Gregory's testimony at the July 5 federal hearing even concerned the killing of Mark Motley.   Super. Ct. Dir. App. op. at 6-7.   The Superior Court further decided that, if Gregory's July 5 testimony did relate to the killing of Mark Motley, under Pennsylvania law, Petitioner nevertheless was not entitled to a new trial based on that testimony. *Id.* at 7-8.

Because the Superior Court did not adjudicate Petitioner's due process claim, the deferential standard of review contained in 28 U.S.C. § 2254(d) does not apply and this court may review the claim *de novo.   See Bronshtein v. Horn*, 404 F.3d 700, 710 n.4 (3d Cir. 2005).   This court has reviewed Gregory's trial testimony and his July 5, 2001 testimony.   At trial, Gregory testified that

he saw Petitioner shoot at Jeffrey and Hakeem Cooper point a gun at Mark Motley, however, he did not see Motley being killed.  (N.T. 7/17/01 at 453, 455, 457).  Gregory also stated that he had testified against Jeffrey Johnson at Johnson's federal sentencing hearing earlier that month.  *Id.* at 464.  At the July 5 sentencing hearing, Gregory was cross-examined by Jerry S. Goldman, counsel for Jeffrey Johnson.  Goldman asked Gregory if he knew Mike Motley.  (N.T. 7/5/01 at 39).  Another counsel attempted to correct Goldman's question by interjecting "Mark," but Gregory then asked if Goldman meant "Mike Motley," to which Goldman responded "Yeah."  *Id.*  Gregory then testified that he had heard Mike Motley had been shot in the back but that he had not been present at that shooting.  *Id.*

Based on the above dialogue, it appears that, on July 5, Gregory was not testifying about *Mark* Motley's death, but rather the shooting death of *Mike* Motley.  As the Superior Court noted, Mark Motley's brother, Michael Motley, had died via a similar gunshot wound to the back.  Super. Ct. Dir. App. op. at 6-7 (citing *Commonwealth v. Jones*, 35 Phila. Co. Rptr. 124 (Pa. Com. Pl. 1997)).  Inasmuch as Gregory was testifying about a different crime involving "Mike Motley" on July 5, Petitioner has not proved that Gregory committed perjury when he testified at Petitioner's trial that he did witness the events surrounding *Mark* Motley's death.  Absent proof that Gregory committed perjury at Petitioner's trial, the prosecution's use of his trial testimony did not violate due process.  *See Napue v. Illinois*, 360 U.S. 264, 269 (1959) (noting that the prosecution's knowing use of perjured testimony to obtain a conviction violates due process).  Accordingly, Petitioner's due process claim lacks merit.[4]

---

[4]Petitioner also argues that trial counsel was ineffective for failing to obtain the transcript of Gregory's July 5 testimony to use for cross-examination at trial.  Pet'r's Br. at 12, 18-20.  This claim was not presented to the Superior Court on direct appeal or during the PCRA appeal.  *See* Super. Ct. Dir. App. op. at 3-4, *Commonwealth v. Leadum*, No. 2047 EDA 2004, slip op. at 3-4 (Pa. Super. Ct. June 22, 2005).  Thus, the claim is unexhausted and defaulted, since Petitioner can no longer file a PCRA petition to exhaust the claim because it is well over one year since his conviction became final

**D.      Jury Instruction Error claim - Ground Two**

Petitioner argues that the trial court erred in refusing to provide the special jury charge that Pennsylvania courts use when a witness is a paid informant.  Pet'r's Br. at 21-22.  He contends that the failure to give this special charge violated his right to due process.  *Id.* at 22.  Petitioner states that the trial court should have viewed Gregory and Jeffrey Hunt as paid informants because they testified against him based on plea agreements they had reached with federal prosecutors.  *Id.* at 21.

This court cannot properly afford habeas relief on this claim, because it is grounded on an alleged misapplication of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  The Superior relied upon state court precedent in defining what type of witness would qualify as a "paid informant" in order to determine that the Hunt brothers were not paid informants.[5]  Super. Ct. Dir. App. op. at 8-9.  Petitioner now invites this court to re-examine this determination and hold that the Hunt brothers were paid informants.  Petitioner's invocation of due process does not authorize the court to re-examine state law questions.  *Id.*  Moreover, the United States Supreme Court has not held, under the Due Process Clause, that a jury must be given a special instruction regarding the credibility of a witness who may be a "paid informant."  Accordingly, Petitioner cannot be afforded habeas relief based on his second claim.

**E.      Trial Counsel Ineffectiveness Based on Variance in the Objective of the Conspiracy claim - Ground Three**

Petitioner next claims that trial counsel rendered ineffective assistance when he failed to

_____

on October 21, 2003 and the PCRA statute of limitations has expired for him.  *See* 42 Pa. Cons. Stat. Ann. § 9545(b)(1), (3).  For this reason, the claim is procedurally defaulted.  *See Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir. 2001).  Petitioner has not demonstrated cause and prejudice or fundamental miscarriage of justice to excuse the default of his claim, therefore, it cannot be reviewed on its merits.  *Id.* at 415-16.

[5]The Superior Court concluded that the Hunt brothers were not paid informants under Pennsylvania law, because they negotiated plea agreements after Petitioner committed the crime about which they testified.  Super. Ct. Dir. App. op. at 9  (citing *Commonwealth v. Diehl*, 585 A.2d 1112, 1116-17 (Pa. Super. Ct. 1991)).

object to the trial court's decision to instruct the jury that the objective of the conspiracy was to murder Mark Motley rather than merely to shoot him, as had been charged in the information the Commonwealth filed against Petitioner. Pet'r's Br. at 26-27. Petitioner complains that the trial court, thereby, constructively amended the information, an improper invasion of the "prosecutorial function." *Id.* at 29.

The Superior Court resolved this claim by finding that the trial court did not constructively amend the information because, in Pennsylvania, "a criminal conspiracy to shoot someone does not alone constitute a conspiracy to commit any particular crime. Rather, depending on the circumstances, the underlying crime could be murder, manslaughter, or even aggravated assault." Super. Ct. Dir. App. op. at 11. The Superior Court also noted that, in Pennsylvania, a criminal information is to be read in a common sense, rather than an overly technical, manner. *Id.* Thus, since the information charged Petitioner with both conspiring to shoot and murdering Mark Motley, a common sense reading of the information would lead to the conclusion that the object of the conspiracy to shoot Mark Motley was to accomplish murder. *Id.* The Superior Court also noted that Petitioner had failed to explain how his defense strategy varied due to his alleged belief that he was not being prosecuted for conspiring to murder Mark Motley. *Id.* Having found that the omitted claim of error lacked merit, the Superior Court concluded that trial counsel was not ineffective for failing to raise it. *Id.*

The state court's conclusion that trial counsel's failure to raise a meritless objection is neither contrary to nor a unreasonable application of Supreme Court precedent. First, the Supreme Court has never held that an attorney could render ineffective assistance for failing to raise a claim that lacked merit. Therefore, the Superior Court's adjudication of Petitioner's ineffective assistance

claim is not contrary to Supreme Court precedent.  *See Williams v. Taylor*, 529 U.S. at 405-06. Second, the Third Circuit has held that an attorney is not ineffective for failing to raise a claim that lacks merit.  *Parrish*, 150 F.3d at 328-29; *Moore v. Deputy Commrs. of SCI-Huntingdon*, 946 F.2d at 245.  Therefore, the Superior Court's adjudication of Petitioner's ineffective assistance of counsel claim was a reasonable application of Supreme Court precedent.  *See Marshall v. Fredericks*, 307 F.3d at 71 n.24; *Moore v. Morton*, 255 F.3d at 104 n.8.

The court must also consider the propriety of the Superior Court's conclusion that the claim counsel failed to raise lacked merit.  Applying Pennsylvania law, the Superior Court concluded that the trial court did not constructively amend the information.  This court may not re-examine this question of state law on habeas review and, instead, must accept the Superior Court's resolution of it as correct.  *See Estelle v. McGuire*, 502 U.S. at 67-68.  Therefore, there is no basis to reverse the Superior Court's conclusion that trial counsel was not ineffective for failing to challenge the trial court's decision to charge the jury that the object of the conspiracy was to murder Mark Motley.[6]

## F.   Trial Counsel Ineffectiveness Based on Failure to Preserve an Objection to the Offense Gravity Score Employed at Sentencing claim- Ground Four

Petitioner next argues that trial counsel rendered ineffective assistance when he failed to preserve an objection to the offense gravity score used at sentencing by filing a motion to modify his sentence.  Pet'r's Br. at 31-36.  He argues that the trial court should have used the offense gravity score that corresponded to the offense of conspiring to shoot Mark Motley rather than the higher offense gravity score applicable for conspiring to murder Mark Motley.  *Id.* at 33-35.

The Superior Court noted that this claim  was premised on Petitioner's misconception that

---

[6]Petitioner's claim implicates no Superior Court findings of fact, thus, 28 U.S.C. § 2254(d)(2) does not provide an alternative basis for habeas relief.

he should have been convicted of conspiracy to commit aggravated assault not murder.  Super. Ct. Dir. App. op. at 13.  However, Superior Court explained that inasmuch as Petitioner was properly charged and convicted of conspiracy to murder Mark Motley this contention was unsupported.  *Id.* Thus, counsel was not ineffective for not filing a baseless post-sentence motion.  *Id.*

The Superior Court's conclusion that Petitioner's ineffective assistance claim lacked merit because there was no merit to the claim trial counsel failed to preserve is neither contrary to nor a unreasonable application of Supreme Court precedent.  First, the Supreme Court has never held that an attorney could render ineffective assistance for failing to raise a claim that lacks merit.  Therefore, the Superior Court's adjudication of Petitioner's ineffective assistance claim is not contrary to Supreme Court precedent.  *See Williams v. Taylor*, 529 U.S. at 405-06.  Second, the Third Circuit has held that an attorney is not ineffective for failing to raise a claim that lacks merit.  *Parrish*, 150 F.3d at 328-29; *Moore v. Deputy Commrs. of SCI-Huntingdon*, 946 F.2d at 245.  Therefore, the Superior Court's adjudication of Petitioner's ineffective assistance of counsel claim was a reasonable application of Supreme Court precedent.  *See Marshall*, 307 F.3d at 71 n.24; *Moore v. Morton*, 255 F.3d at 104 n.8.

The court must also consider the propriety of the Superior Court's conclusion that the claim counsel failed to raise lacked merit.  The Superior Court concluded that, under principles of Pennsylvania law, Petitioner was properly charged and convicted of conspiracy to murder Mark Motley.  Pa. Super. Ct. Dir. App. op. at 13.  This court may not re-examine a question of state law on habeas review and, instead, must accept the Superior Court's resolution of it as correct.  *See Estelle v. McGuire*,  502 U.S. at 67-68.  Therefore, there is no basis to reverse the Superior Court's conclusion that trial counsel was not ineffective for failing to challenge the offense gravity score

-13-

used at sentencing by filing a post-sentence motion to modify Petitioner's sentence.[7]

**G.   Sufficiency of the Evidence claim- Ground Five**

Petitioner next argues that the evidence adduced at trial was insufficient to sustain his conviction for conspiracy to murder Mark Motley.  Pet'r's Br. at 37-42.  He specifically complains that  the Commonwealth produced no evidence that he agreed with Hakeem Cooper, the actual shooter to kill Mark Motley.  *Id.* at 38, 41-42.

The Superior Court began its resolution of this claim by noting that, when reviewing a challenge to the sufficiency of the evidence, the court "'view[s] the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as verdict winner and determine[s] whether the jury could find every element of the crime beyond a reasonable doubt.'" Super. Ct. Dir. App. op. at 13 (quoting *Commonwealth v. Romero*, 722 A.2d 1014, 1020 (Pa. 1999)). The Superior Court then explained that, under Pennsylvania law, criminal conspiracy can be proven when one person agrees with others to commit a crime or when one person agrees to aid others in planning or committing a crime.  *Id.* at 14 (citing 18 Pa. Cons. Stat. Ann. § 903).  The court also noted that criminal conspiracy is almost always proven through circumstantial evidence and that the agreement necessary for proving a conspiracy may be inferred from a variety of circumstances including:  the relationship between the parties, the circumstances surrounding the crime, and knowledge of and participation in the crime.  *Id.* at 14-15 (citing *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. Ct. 2002); *Commonwealth v. Smith*, 606 A.2d 939, 943 (Pa. Super. Ct. 1990)).  Finally, the Superior Court concluded that the Commonwealth had presented ample sufficient evidence of conspiracy:

---

[7]Petitioner's claim implicates no Superior Court findings of fact, thus, 28 U.S.C. § 2254(d)(2) does not provide an alternative basis for habeas relief.

The facts adduced by the Commonwealth in this case show the following. [Petitioner] and his cohorts approached the victim as a group. N.T., 7/17/01, at 348. [Petitioner] confirmed his association with the group by responding to Hunt to "shut the 'F' up." *Id.* Furthermore, [Petitioner] committed the overt act of pulling out a gun and pointing it. *Id.* He also fired his gun several times at Hunt after Hunt began struggling with one of [Petitioner's] co-conspirators. *Id.* at 383-84. We conclude that these facts were sufficient to enable the jury to find beyond a reasonable doubt that [Petitioner] agreed with his cohorts to either commit murder or aid in the commission of the murder of Mark Motley.

Super. Ct. Dir. App. op. at 15.

Petitioner's claim that the evidence presented at trial was insufficient to support his conviction for criminal conspiracy is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979). Under *Jackson*:

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction ... does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt'. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review, *all of the evidence* is to be considered in the light most favorable to the prosecution.

*Jackson*, 443 U.S. at 318-319 (citations omitted) (emphasis as in original). In addition, where historical facts support conflicting inferences, the habeas court engaging in sufficiency of the evidence review must presume that the trier of fact resolved those conflicts in favor of the prosecution. *Id.* at 326. Finally, when applying the sufficiency of the evidence test, the habeas court

must consider the types of evidence the state courts deem relevant to proving the elements of the offense at issue.[8] *Jackson*, 443 U.S. at 324.   This is required because the elements of the criminal offense are defined by state law.  *See id.* at 324 n.16.

The standard of review the Superior Court applied is, thus, virtually identical to the federal standard announced in *Jackson v. Virginia*, even though the Superior Court did not cite *Jackson*. As *Jackson* requires, the Superior Court viewed the evidence in the light most favorable to the Commonwealth and considered what type of evidence Pennsylvania law regards as relevant toward proving the existence of a criminal conspiracy.  The Superior Court's adjudication of Petitioner's claim clearly was not contrary to Supreme Court precedent; therefore, Petitioner's claim requires review under § 2254's unreasonable application clause.  *Cf. Williams v. Taylor*, 529 U.S. at 406 (noting that, when the state court identifies the correct legal rule from Supreme Court precedent, its decision will not be "contrary to" Supreme Court precedent and must be analyzed under the "unreasonable application" clause).

This court finds that the Superior Court's decision was a reasonable application of the *Jackson* standard.  As *Jackson* requires, the Superior Court considered whether the Commonwealth's evidence was the type of evidence which Pennsylvania law indicates is relevant to the elements of criminal conspiracy.  *See Jackson*, 443 U.S. at 324.  Under Pennsylvania law, facts such as the relationship between the parties, the circumstances surrounding the crime, and knowledge of and participation in the crime are relevant to proving the existence of a criminal conspiracy. *Commonwealth v. Lambert*, 795 A.2d at 1016; *Commonwealth v. Smith*, 606 A.2d at 943.  Further, as the Superior Court explained, the Commonwealth did produce evidence that Petitioner acted in

---

[8]The Third Circuit has held that, when applying the sufficiency of the evidence test, the habeas court should "look to the evidence the state considers adequate to meet the elements of a crime governed by state law." *Jackson v. Byrd*, 105 F.3d 145, 149 (3d Cir. 1997).

concert with his co-conspirators, aided them in threatening and assaulting the decedent and Jeffrey Hunt by brandishing a handgun, and shooting Hunt.  (N.T. 7/17/01 at 346-56).  In light of this evidence, the Superior Court reasonably determined that the Commonwealth presented sufficient evidence to prove Petitioner conspired with Hakeem Cooper to murder Mark Motley.[9]

## H.   Trial Counsel Ineffectiveness Based on Failure to Object to the Alleged Prosecutorial Misconduct During Closing Argument claim- Ground Six

Petitioner next argues that trial counsel was ineffective in failing to object to allegedly improper comments the prosecutor made during his closing argument.  Pet'r's Br. at 43-48.  He specifically complains about the prosecutor's comment which characterized as "nitpicking" the defense strategy to point out the absence of fingerprints on the recovered guns and the lack of a positive gunpowder residue test and the comment which asked the jury to infer that Petitioner and his co-defendants wanted to kill the victims because the victims were dealing drugs in the neighborhood.  *Id.* at 44-46.

When considering this claim, the Superior Court noted that "'[a] prosecutor's remarks during closing argument will seldom mandate a new trial.'"  Super. Ct. Dir. App. op. at 16 (quoting *Commonwealth v. Ritter*, 615 A.2d 442, 451 (Pa. Super. Ct. 1992)).  The court then articulated the Pennsylvania standard that "'comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.'"  *Id.* at 16-17 (quoting *Commonwealth v. Hawkins*, 701 A.2d 492, 511 (Pa. 1997)).  The Superior Court concluded that Petitioner could not demonstrate any prejudice caused

---

[9]Petitioner's claim implicates no Superior Court findings of fact, because, when a court engages in sufficiency of the evidence review, it does not find facts.  *See Jackson v. Virginia,* 443 U.S. at 318-19.  Thus, 28 U.S.C. § 2254(d)(2) does not provide an alternative basis for habeas relief.

by trial counsel's failure to object because he could not show that the prosecutor's comments "formed a fixed bias in the mind of the jurors so that they could not weigh the evidence and render a true verdict." *Id.* at 17-18.

The Superior Court's conclusion that Petitioner's ineffective assistance claim lacked merit because there was no merit to the objection trial counsel failed to make is neither contrary to nor a unreasonable application of Supreme Court precedent.  First, the Supreme Court has never held that an attorney could render ineffective assistance for failing to raise a claim that lacked merit. Therefore, the Superior Court's adjudication of Petitioner's ineffective assistance claim is not contrary to Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. at 405-06.  Second, the Third Circuit has held that an attorney is not ineffective for failing to raise a claim that lacks merit. *Parrish*, 150 F.3d at 328-29; *Moore v. Deputy Commrs. of SCI-Huntingdon*, 946 F.2d at 245. Therefore, the Superior Court's adjudication of Petitioner's ineffective assistance of counsel claim was a reasonable application of Supreme Court precedent. *See Marshall*, 307 F.3d at 71 n.24; *Moore v. Morton*, 255 F.3d at 104 n.8.

The court must also consider the propriety of the Superior Court's conclusion that the objection counsel failed to make lacked merit.  The Superior Court followed the correct Pennsylvania standard for assessing claims of prosecutorial misconduct during closing argument, so this court may not re-examine this question of state law on habeas review and, must accept the Superior Court's resolution of it as correct. *See Estelle v. McGuire*, 502 U.S. at 67-68.  Therefore, there is no basis to reverse the Superior Court's conclusion that Petitioner could not establish prejudice because the prosecutor's remarks did not constitute reversible error under Pennsylvania law.

The question remains, however, whether the prosecutor's remarks constituted prosecutorial misconduct under federal constitutional principles. This is a question which the Superior Court did not decide; thus, the court will review it *de novo*.[10]  *See Bronshtein v. Horn*, 404 F.3d at 710 n.4.

A claim of prosecutorial misconduct during closing argument requires the reviewing court to determine if the prosecutor's challenged remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S.637, 643 (1974). When considering the propriety of a prosecutor's remarks during closing argument, it is important to view the remarks in context. *United States v. Robinson*, 485 U.S. 25, 33 (1988). Whether the prosecutor's remarks are responsive to arguments made by defense counsel is important, because the purpose of a criminal trial is to determine the factual question of the defendant's guilt or innocence and, to achieve this end, both the prosecutor and the defendant must fairly meet respective evidence and arguments of one another. *Id.* It is also important to consider the strength of the prosecution's case and whether any cautionary instructions were given. *See Greer v. Miller*, 483 U.S. 756, 765-67 (1987) (analyzing a claim of prosecutorial misconduct during examination of a witness).

Petitioner complains that the prosecutor inappropriately characterized the defense as "nitpicking" because, during closing arguments, the defense had emphasized the absence of fingerprints on the recovered guns and any positive gun powder residue tests.[11]  (N.T. 7/19/01 at 721). The prosecutor proceeded to explain that the crime lab technician had told the jury that, with

---

[10]In his brief, Petitioner relies upon federal constitutional principles regarding prosecutorial misconduct. *See* Pet'r's Br. at 43-47. The District Attorney has not argued that Petitioner failed to present a federal constitutional basis for the prosecutorial misconduct component of his claim in the states courts and, therefore, the claim is unexhausted and procedurally defaulted. *See* Resp. at 27-31. Therefore, the court will consider this claim on its merits.

[11]The remarks Petitioner complains about are the following: "What is the defense to this strong evidence the Commonwealth has, I submit to you is a perfect case, overwhelming evidence. First we have the nitpicking defense. No fingerprints on the gun. No positive SEM tests." (N.T. 7/19/01 at 721).

respect to the recovered guns, "[t]here is [sic] no fingerprints on the guns of any human being.  We know someone fired them, which just means there are no fingerprints at all." *Id.* at 721-22.  He also noted that the firearms expert had explained that the absence of gunpowder residue was not conclusive evidence that a person had not fired a gun, indeed, in approximately half of the cases where a person commits suicide by shooting himself or herself in the head, there is no gun powder residue on the person.  *Id.* at 722.

The prosecutor's remarks were responsive to the defense arguments in that defense counsel in his closing argument emphasized the lack of positive gunpowder residue tests and the absence of fingerprints on the recovered guns.  (N.T. 7/19/01 at 681, 686-87, 688, 689).  As such, the prosecutor's remarks were not improper.  *United States v. Robinson*, 485 U.S. at 33.  Further, the prosecutor accurately (albeit awkwardly) noted that the crime lab technician had testified that there were no identifiable fingerprints on the recovered guns, (N.T. 718/01 at 530, 539-40), and that the firearms expert had testified that, in approximately half the cases where a person commits suicide by shooting himself or herself in the head, there is no gun powder residue on the person.  (N.T. 7/19/01 at 664).  These remarks were responsive to defense arguments and accurately stated the testimony presented, hence, no misconduct occurred.

The second remarks Petitioner complains about concern the prosecutor asking the jury to infer that Petitioner and his co-defendants wanted to kill the victims because the victims were dealing drugs in the neighborhood.[12]  (N.T. 7/19/01 at 733).  There is some basis in the record for the suggested inference because the Hunt brothers admitted they sold drugs in the neighborhood,

---

[12]The remarks Petitioner complains about are the following:  "Why would these three co-defendants want to kill Mr. Motley and Mr. Hunt?  Perhaps you can make a logical inference from the evidence.  Maybe the three co-defendants and the men who were with them were shocked, shocked Jeffrey Hunt and Mark Motley were dealing drugs in their neighborhood, were horrified that somebody was dealing drugs in the Spring Garden Homes.  Maybe there's another logical inference you can make from the evidence."  (N.T. 7/19/01 at 733).

Jeffrey Hunt stated that the decedent sold drugs for him, and the Hunt brothers admitted that they had known Petitioner and all but one of his co-defendants a long time before the crimes took place, (N.T. 7/17/01 at 341-43, 362-67, 452-53, 458-59, 462-63), thereby making it likely that Petitioner and his co-defendants knew the Hunt brothers were drug dealers.  However, since neither Hunt brother testified about what was said by the defendants prior to the attack (other than Petitioner shouting an obscenity) and no defendant testified at trial, there is no direct evidence that the victims' drug-dealing actually motivated the attack on them.  Accordingly, for purposes of resolving Petitioner's claim, the court will assume that the prosecution improperly argued that the victims' drug-dealing motivated the attack by Petitioner and his co-defendants.

Nonetheless, the evidence presented against Petitioner was quite strong.  Through the Hunt brothers, the jury learned that Petitioner and his co-defendants approached weapons on the victims, fought with and shot the victims, including shooting the decedent as he was running away from the altercation.  (N.T. 7/17/01 at 344-56, 453-58).  This powerful evidence likely caused the jury to return a guilty verdict against Petitioner.  Further, the jury was instructed that it was their job to determine the facts and the guilt or innocence of each defendant based on the evidence presented, (N.T. 7/19/01 at 738-39), and, while they could consider the arguments of counsel, they should rely upon their recollection of the evidence presented and draw only those inferences they found reasonable.  *Id.* at 672.  These instructions were designed to attenuate any potential improper influence from closing arguments of counsel and jurors are presumed to follow the instructions given.  *See Greer v. Miller*, 483 U.S. at 466 n.8.  In light of the strength of the evidence against Petitioner and the court's instructions, there is no reason to suspect that the jury failed to decide Petitioner's guilt based on the evidence actually presented and, instead, was improperly influenced

by the prosecutor's remarks.   Accordingly, the court concludes that Petitioner's claims of prosecutorial misconduct lack merit.  Therefore, his ineffective assistance claim lacks merit.[13]  *See Parrish*, 150 F.3d at 328-29 (holding that an attorney is not ineffective for failing to raise a claim that lacks merit); *Moore v. Deputy Commrs. of SCI-Huntingdon*, 946 F.2d at 245 (same).

**I.     Trial Counsel Ineffectiveness Based on Failure to Seek a Cautionary Instruction Regarding a Handgun Seized After Petitioner's Arrest claim- Ground Seven**

Petitioner further alleges that trial counsel rendered ineffective assistance by failing to seek a cautionary instruction regarding a handgun recovered approximately thirteen hours after his arrest from the location where he was arrested.  Pet'r's Br. at 49-52.  Petitioner claims that the firearm in question has no relevance to his guilt or innocence.  *Id.* at 50.  He goes on to argue that, given the gun's lack of relevance, the jury should have been instructed that the gun was "only admissible for a limited purpose."  *Id.* at 51 (citing *Commonwealth v. Billa*, 555 A.2d 835, 842 (Pa. 1989)).

When Petitioner raised his claim in PCRA proceedings, he argued that the gun in question was not relevant because it had not been recovered from the location wherein he had been hiding prior to being discovered by the police and being arrested.[14]  *Commonwealth v. Leadum*, No. 2047 EDA 2004, slip op. at 5 (Pa. Super. Ct. June 22, 2005) ("Super. Ct. PCRA App. op.").  The Superior Court  found the claim lacked merit because the record revealed that the gun had been found in the location where Petitioner had been hiding prior to being arrested.  *Id.*  Since the evidence was relevant for this reason, the Superior Court concluded that trial counsel was not ineffective for failing

---

[13]Petitioner's claim implicates no Superior Court findings of fact, thus, 28 U.S.C. § 2254(d)(2) does not provide an alternative basis for habeas relief.

[14]Shortly after the crimes took place, the police arrested Petitioner's co-defendants.  (N.T. 7/18/01 at 581, 583, 585).  While this was transpiring, Petitioner was hiding underneath a parked car.  *Id.* at 581, 584.  Although the arresting officer did not testify concerning whether Petitioner was armed when arrested, *id.* at 576, Petitioner maintains that he was unarmed.  Pet'r's Br. at 49.  Several hours later and after the parked car moved, a witness called the police to alert them that a gun was at the location where the car Petitioner was hiding under had been parked and the police subsequently recovered it.  *Id.* at 587-89, 595-96.

to seek a limiting instruction. *Id.*

The Superior Court's adjudication of Petitioner's claim was based on the determination that the facts presented at trial simply did not support his contention that the handgun was not recovered from the location where he was hiding immediately prior to his arrest. This conclusion, based upon a factual determination, must be reviewed under 28 U.S.C. § 2254(d)(2). At trial, Commonwealth witness Victor Robinson testified that he saw Petitioner hiding underneath a parked car. (N.T. 7/18/01 at 581, 584). Petitioner was unarmed when he was arrested. Pet'r's Br. at 49. However, several hours later, the car moved and Mr. Robinson saw a handgun lying on the street at the location where the car had been parked. *Id.* at 587. He called the police so they could retrieve the gun. *Id.* at 587-88. Based on this evidence, it was reasonable for the Superior Court to conclude that the gun was recovered from the location where Petitioner had been hiding prior to being arrested. Therefore, Petitioner cannot be afforded relief under § 2254(d)(2). *See Miller-El v. Cockerell*, 537 U.S. at 340; *see also Campbell v. Vaughn*, 209 F.3d 280, 291 (3d Cir. 2000) (finding that a state court factual determination was reasonable under § 2254(d)(2) because there was evidence from one witness, albeit refuted by another witness, which supported the fact found by the state court).

The Superior Court also concluded that the handgun in question was relevant. This determination was made under state law and this court may not re-examine it. *See Estelle v. McGuire*, 502 U.S. at 67-68. Petitioner maintains that a cautionary instruction should have been sought because the gun was only relevant for a limited purpose, (that he fails to identify). This question was not addressed by the Superior Court. However, it is clear that no cautionary instruction was required.

Pennsylvania law requires that cautionary instructions be given when evidence of criminal

activity that is not charged in the case being tried is admitted to prove a matter relevant to the case being tried. *Commonwealth v. Billa*, 555 A.2d 835, 840-42 (Pa. 1989). Other criminal activity might be admitted to prove or permit: (1) motive; (2) intent; (3) absence of mistake or accident; (4) common scheme, plan or design; (5) identity; (6) impeachment of the defendant; (7) threatening or intimidating the victim; or (8) situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development ("*res gestae*"). *Id.* at 840. When such evidence is admitted, the jury must be instructed which of these limited reasons justify its admission so that the jury can properly consider it. *Id.* at 841-42.

Here, the evidence admitted, a handgun, was believed to be used by Petitioner during the commission of the crime for which he was being tried, not some other crime Petitioner may have committed. The gun was directly relevant to the case, hence there was no basis to provide a limiting instruction regarding it. Since there was no basis to seek a limiting instruction under Pennsylvania law, counsel was not ineffective for failing to seek one. *See Parrish*, 150 F.3d at 328-29 (holding that an attorney is not ineffective for failing to raise a claim that lacks merit); *Moore v. Deputy Commrs. of SCI-Huntingdon*, 946 F.2d at 245 (same).

## III.    CONCLUSION

All of Petitioner's claims are procedurally defaulted or lack merit. Further, reasonable jurists would not debate the appropriateness of this court's procedural or substantive dispositions of his claims; therefore, a certificate of appealability should not issue. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, I make the following:

-24-

## RECOMMENDATION

AND NOW, this 11th day of December, 2006, for the reasons contained in the preceding report, it is hereby RECOMMENDED that Petitioner's claims be DISMISSED and DENIED, without an evidentiary hearing.  Petitioner has neither demonstrated that any reasonable jurist could find this court's procedural or substantive rulings debatable, nor shown denial of any Constitutional right; hence, there is no probable cause to issue a certificate of appealability.

It be so **ORDERED**.


 */s/ Carol Sandra Moore Wells*
CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE